PETER GALLAGHER v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

December 30, 1904.

Nos. 14,113—(144).

**Contributory Negligence.**
> The trial court rightly instructed the jury in this, a personal injury action, to return a verdict for the defendant, for the reason that the plaintiff was, as a matter of law, guilty of contributory negligence.

Action in the district court for St. Louis county to recover $50,000 for personal injuries. The case was tried before Dibell, J., who, upon the close of the testimony, directed a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*J. De La Motte* and *W. E. Dodge,* for appellant.
*Washburn, Bailey & Mitchell,* for respondent.

START, C. J.

This is a personal injury case. The trial court, at the close of the evidence, directed a verdict for the defendant, and the plaintiff appealed from an order denying his motion for a new trial.

The only assignment of error argued in the brief of plaintiff is that the court erred in so directing a verdict. Assignments of error not specifically urged in the brief will not be considered. Minneapolis, St. P. & S. Ste. M. Ry. Co. v. Firemen's Ins. Co., 62 Minn. 315, 64 N. W. 902. The evidence, taking the most favorable view of it for the plaintiff, shows these facts: The plaintiff is a man forty one years of age. His occupation was that of a contractor before he was injured. During the years 1900, 1901, and 1902 he had contracts with a lumber company to unload from the cars its logs as they were brought in by rail to the defendant's yards in the city of Duluth, and to bank them on the westerly shore of Rice's Point. The cars were not unloaded and returned as rapidly as the defendant desired, and to expedite the return of the cars, and for the convenience of the plaintiff, it was arranged

[1] Reported in 101 N. W. 942.

between him and defendant's general yardmaster that the plaintiff might ride on the switch engines passing through the yards.   The yardmaster told him that the proper way to flag the engines was to get in the center of the track, and waive them down with both hands, at the same time explaining to him the signal to be given.   Thereafter, and until he had completed his contracts with the lumber company, the plaintiff, whenever he wished to ride on the engines, would step in the middle of the track, give the signal, and those in charge thereof would either stop and let him get on, or give him a signal to get off the track, and he would do so.

The plaintiff was injured May 27, 1902.   On that day the rolling of the logs into the bay had been finished, and his contracts with the lumber company practically completed.   The last car of logs, however, was unloaded a month before this time.   At the time of his injury the plaintiff was on his way to the yard office to have a car set in the next morning to take away his tools and materials.   He saw an engine and seven cars backing through the yard from Superior to Duluth.   The engineer and fireman were facing from the plaintiff, but on the footboard of the engine there was a switchman, whose duty it was to look out for obstructions on the track, watch out for the switches, and get off and turn them when necessary, and give signals to the engineer.   The plaintiff saw the engine some four hundred feet away, which was backing at the rate of four or five miles an hour. He stepped into the center of the track, facing the engine, and gave the usual signal to stop.   The switchman on the footboard gave no signal of any kind either to the plaintiff or to the engineer, to the plaintiff's knowledge, nor did the engine slow down.   The evidence will not justify a finding that the switchman in fact saw the plaintiff on the track at any time before the engine struck him, or a finding that the plaintiff was injured by the wanton or wilful negligence of the defendant; but it is sufficient to sustain a finding that if the switchman had been watching the track at the time he must have seen the plaintiff.   The plaintiff could not see the engineer from where he stood on the track, and he could not have had any reason to suppose the engine would stop unless the switchman gave the signal to the engineer to do so.   He stepped into the center of the track, facing the switchman, relying upon the stopping of the engine for him, as

usual, until it was within two feet of him. What then happened, to use his own language, was this:

> I got on the track, and I flagged them down, and I got no signal to get off, and when the engine come up to me that I seen she was not going to stop, I didn't know what was the best to do. I looked for the side to jump out of the road, and she was so close on me that I didn't know what was best. I suppose I got mixed up or bothered a little bit, and I done what I thought was the best, made for the footboard—stepped for the footboard —thinking I would get up on the engine, and I catched the handrail—handhold—grabbed into it; and when I stepped, I stepped, I suppose, too quick for the footboard, and I just put a foot in front of the footboard, and the footboard struck my leg and it broke."

The ground was level on each side of the track, and there was nothing to prevent the plaintiff from stepping off the track to a place of safety before the engine was within two feet of him.

It is the contention of the plaintiff that he was not a trespasser nor a mere licensee on the premises of the defendant, but that he was there by its express invitation, and that it owed him the duty of active vigilance to prevent injury to him, which it failed to exercise, and that the question of his contributory negligence was one of fact; therefore the trial court erred in not submitting the case to the jury. On the other hand, the defendant claims that the plaintiff was at the time he was injured a trespasser, or at most a mere licensee, on its premises, and that it owed him no duty until it in fact discovered him in a position of peril; and, further, that as a matter of law he was guilty of contributory negligence.

Upon the undisputed evidence in this case we are so clearly satisfied that the plaintiff was, as a matter of law, guilty of contributory negligence, that we find it unnecessary to discuss or decide any other question. It is only in exceptional cases that the question of contributory negligence is one of law, but this case falls within the exception. The plaintiff was a mature man, in the possession of all of his faculties, familiar with the defendant's yard and the movements of its trains therein. He got upon the track, and watched the engine with

seven cars backing toward him for some four hundred feet at the rate of four or five miles an hour. He saw that the switchman on the footboard did not give any signal to the engineer to stop. He knew that the engine was not slowing down. And yet he stands on the track until the engine was only twenty four inches from him. Then he attempted to board the moving engine. It was inexcusable negligence for him to wait until the engine was practically upon him before stepping to a place of safety. If, as his counsel claims, he was compelled to face an emergency when he attempted to board the moving engine, it was an emergency created by his own negligence in so remaining upon the track until it was too late to save himself. It follows that the trial court correctly instructed the jury to return a verdict for the defendant.

Order affirmed.